WOMAN'S HOME COMPANION READING CLUB and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*April 13—May 9, 1939.*

372

*Alfred E. La France* of Racine, for the appellants.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Myra M. Snyder there was a brief by *Thompson, Myers & Helm* of Racine, attorneys, and *Gerald C. Snyder* of Waukegan, Illinois, of counsel, and oral argument by *Samuel P. Myers.*

FOWLER, J. Myra M. Snyder .applies to the Industrial Commission for allowance of death benefits under the Workmen's Compensation Act for the death of her husband who was killed in an automobile accident while on business of his

employer, the plaintiff first above named. The deceased left no children and no one dependent on him wholly for support except as his wife is deemed so dependent. The appellants' only claim is that the evidence does not support the finding of the commission made upon its review of its examiner's finding that the applicant was living with her husband at the time of the accident resulting in his death.

The statutes providing for death benefits provide for different payments in different situations. Sec. 102.48 (1), Stats., provides that if a deceased employee killed in course of his employment leaves no one wholly dependent on him for support his unestranged surviving parents shall be entitled to a benefit of $1,200; sec. 102.49 (5) provides that in such case a sum not exceeding $2,000 shall be paid into the state treasury, in addition to any sum paid for partial dependency; and sec. 102.50 provides that in such case the employer shall pay for his burial expenses not exceeding $200. The deceased employee left unestranged surviving parents. Thus if the wife was not wholly dependent on the deceased for support the employer's liability would be $3,400. While if she was so dependent its liability to the wife computed under sec. 102.44 concededly amounts to the $6,000 the commission awarded. Sec. 102.51 (1) provides that a wife shall be "conclusively presumed to be solely and wholly dependent for support upon a deceased employee . . . with whom she is living at the time of his death." The sole question involved in the case therefore is whether the instant wife was, within the meaning of the statute, living with her husband at the time of the accident which resulted in his death.

Under the undisputed facts the construction of sub. (1) of sec. 102.51, Stats., above stated, heretofore made, requires affirmance of the award. In *Northwestern Iron Co. v. Industrial Comm.* 154 Wis. 97, 142 N. W. 271, the court in 1913, two years after enactment of the Workmen's Compensation Act, held that within the meaning of sec. 102.51 a wife is living with her husband when there is no legal separation and no actual separation in the nature of an estrange-

ment. It is conceded that in the instant case the deceased employee and the applicant were married, and that there had never been any "legal separation," and it was found by the examiner and the commission that there was no estrangement. Under the statutory rule that the findings of the commission are conclusive we must sustain this finding if there is evidence to support it. Besides the facts above stated, it is undisputed that from February to June, 1937, the wife lived with the husband in a rented room in a hotel in Waukegan. In June she quit rooming with her husband and never thereafter roomed with him. After the wife returned from a visit to her parents she began occupying a room with a girl friend in a hotel across the street from where the husband was living, and so continued until the husband's death. The husband on his wife's leaving him continued to live at the hotel where his wife had been rooming with him until some time after his wife began rooming with her friend, and then began rooming with his parents in Waukegan. The wife on return from her visit to her parents began working in a store where meals were served, and continued so to work until after the husband's death. She supported herself entirely, receiving her meals as part of her compensation. The husband during the period was earning $150 a month. Neither contributed anything to the support of the other. The parties continued friendly; they went out together frequently; saw each other almost daily; he frequently ate his meals where she was employed, and at these times she talked with him when her work permitted; he occasionally spent some time in her room when others were not present; they had sexual relations together once a week; there was no quarrel when she quit rooming with him at the hotel; they talked of getting an apartment in September, but none was procured, and there was then talk of his getting one in the winter. The wife had saved $200 from her earnings and intended to use it to help in furnishing the apartment if and when they

secured one. The accident resulting in death occurred in November, 1937.

We consider that from all this evidence and some other the inference of unestrangement drawn by the commission is supported. Cases from other jurisdictions are cited wherein under similar statutes and similar situations courts have held a husband and wife were not living together. But they are without force here under the holding of this court above cited. The rule of that case as to estrangement has been followed by the commission ever since it was laid down by the court. If the construction of the statute given so soon after its enactment was not according to the legislative intent in enacting it, it may be assumed that the legislature would have amended the statute to express its intent.

Complaint is made that the parents of the deceased and his wife are collusively prosecuting this claim. There seems to have been a sort of rivalry in this case between the insurer and the commission in getting the case started. The insurer of its own motion advised the parents to apply for compensation as unestranged parents. The commission of its own motion advised the wife to apply for compensation as an unestranged wife. In this situation it was agreed between the wife and the parents that the wife should apply for compensation and pay one half of the recovery to the parents which would give them $1,600 more than they could recover on their own application. It is manifest that such an arrangement is not conducive to elicitation of the truth respecting "estrangement." Counsel for plaintiffs argues that it opens the way to fraud, as it manifestly does, and says that he cannot believe that the court will allow an award made under such circumstance to stand. Counsel for applicant argue that action of the applicant was generous and commendatory, and that at worst it only affects the credibility of the applicant and her parents, all of whom testified, and their credibility was for the examiner and the commission to judge. The

commission, not having heard the testimony or seen the witnesses when testifying, is in no better position to judge as to credibility than the trial court, or this court for that matter, but the rule of the statute still stands, and a finding of the commission must be affirmed if there is evidence to support it. Counsel for the commission does not mention the matter. No authorities are cited by any counsel as to the effect of such an arrangement. But if we take the matter at its worst, and assume that the conduct of the applicant was not only such as to be conducive to prosecution of fraudulent claims but constituted actual fraud in the instant case, it would appear that nothing can be here done about it. It was not a fraud of the commission, but a fraud of the applicant, and it is only fraud of the commission that can be asserted in an action under the Workmen's Compensation Act to set aside an award. *Pellett v. Industrial Comm.* 162 Wis. 596, 156 N. W. 956; *Buehler Bros. v. Industrial Comm.* 220 Wis. 371, 265 N. W. 227. However, such an agreement should lead the commission and its examiners to view the evidence of the parties to it as to unestrangement with suspicion and scrutinize it carefully and not give credence to it unless corroborated by credible evidence or it quite plainly supports a finding of unestrangement from its inherent probability or proved circumstances. We cannot say that the testimony of the parties to the arrangement was not so scrutinized in the instant case or that the finding as to unestrangement was not so supported.

*By the Court.*—The judgment of the circuit court is affirmed.